D. Maimon Kirschenbaum (DK-2338)
Charles E. Joseph (CJ-9442)
JOSEPH & HERZFELD LLP
757 Third Avenue
25th Floor
New York, NY 10017
Tel: (212) 688-5640
Fax: (212) 688-2548

*Attorneys for Plaintiff, the FLSA Collective Plaintiffs and the proposed Class*
**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
**ANDREAS PEFANIS on behalf of himself
and others similarly situated,**                    INDEX NO: 08 cv 002 (DLC)


       **Plaintiff,**


   v.

**WESTWAY DINER, INC.,**


       **Defendant.**
-----------------------------------------------------------x


**MEMORANDUM OF LAW IN SUPPORT OF PLAITNIFF'S MOTION FOR
CONDITIONAL CERTIFICATION AND NOTICE
<u>PURSUANT TO 29 U.S.C. § 216(b)</u>**

**TABLE OF CONTENTS**

                                                          **Page**

I. PRELIMINARY STATEMENT …………………………………….1

II. STATEMENT OF FACTS …………………………………………..2

III. *HOFFMAN-LAROCHE NOTICE* SHOULD BE ORDERED
IN THIS CASE FOR THE FLSA CLAIMS …………………………..5

    A. Sending Expedited Notice To "Similarly Situated" Employees
    Fulfills The FLSA's Broad Remedial Purposes ……………………….6

    B. Discovery Of Names, Addresses And Telephone Numbers Is
    Proper And Necessary Under H*offman-Laroche* ……………………10

    C. The Proposed Notice Is Fair And Adequate …………………….11

IV. CONCLUSION …………………………………………………..12

Plaintiff, Andreas Pefanis, submits this memorandum in support of his motion for certification of his claims under the Fair Labor Standards Act (the "FLSA") as a collective action pursuant to 29 U.S.C. § 216(b).[1]

## Preliminary Statement

Plaintiff brings this action on behalf of all non-exempt hourly employees of Westway Diner, Inc. ("Westway" or "Defendant"), including kitchen staff, waiters, busboys, and runners. The crux of the Plaintiff's allegations is that *all* of Westway's employees suffered from Defendant's policy of not paying its employees for all time they worked, failing to pay time and a half for overtime, and for failing to keep any records whatsoever of the number of hours its employees worked. In accordance with relevant federal and New York law and the relevant wage orders covering Defendant's business, Plaintiff and the putative plaintiffs, irrespective of their job titles, were all victims of Defendant's admitted failure to comply with applicable wage-hour laws.[2]

Because Westway's workers should be given the chance to recover their wages, Plaintiff asks the Court to:

(1)    Conditionally certify this suit as a collective action;

(2)    Authorize Plaintiff to send an approved Notice of this action along with a Consent form (opt-in form) (both attached as Exhibit A) to all non-exempt hourly

---

[1]    In support of his motion, Plaintiff herewith submits the Affirmation of Maimon K. Kirschenbaum (the "Kirschenbaum Aff."), attaching as Exhibit A, excerpts from the deposition of Petros Dafnos, taken on June 12, 2008; as Exhibit B, excerpts from the deposition of Andreas Pefanis, taken on May 7, 2008; as Exhibit C, employee histories from Westway Diner's payroll printout, bates numbers 2023-2059; and as Exhibit D, Plaintiffs' discovery requests and Defendants' responses thereto.

[2]    This motion, however, only seeks to conditionally certify a class with respect to Plaintiff's FLSA claims.

employees employed by Defendant within the last three years (the "Covered Employees");

    (3)    Order production in a computer readable manner of names, last known mailing addresses, alternate addresses, all telephone numbers, last known email addresses, social security numbers, and dates of employment of all Covered Employees; and

    (4)    Order Defendant to post the Notice, along with the Consent forms, in a place where putative plaintiffs are likely to view it.

### Statement of Facts

Plaintiff worked as a server at Westway for about one year – from on or about November 2006 until on or about November 2007. Plaintiff regularly worked in excess of forty hours per week. He regularly was scheduled to work the 11 a.m. to 8 p.m. shift five days a week. (Dafnos Dep. 12:6-11, 14:19-21, 38:16-25; Pefanis Dep. 70:17-21) Others worked this same shift. (Dafnos Dep. 60:6-9) Some weeks, Plaintiff worked six days per week. (Dafnos Dep. 14:22-24, 15:4-10; Pefanis Dep. 70:22 – 71:2, 71:8-16) Occasionally, Plaintiff was asked to come in earlier at 9 a.m. (but he still worked until 8 p.m.), and sometimes he worked until 11 p.m. (Dafnos Dep. 15:4-10; Pefanis Dep. 70:17-21) As a server, Plaintiff earned $4.60 per hour plus tips.[3] (Kirschenbaum Aff., Ex. C) He received a weekly paycheck from Westway for his hourly pay and was given his cash tips nightly. (Pefanis Dep. 22:2-4, 27:3; *see* Kirschenbaum Aff., Ex. C)

Federal law requires employers to maintain and preserve, for each tipped employee, records of, *inter alia*, (1) the total daily and weekly hours worked; (2) the

---

[3]    Initially, Plaintiff was paid at the rate of $4.35 per hour until the minimum wage for servers was increased to $4.60 per hour in January 2007. (*See* Kirschenbaum Aff., Ex. C)

regular hourly rates of pay for each week in which overtime compensation is due; (3) the total daily and weekly earnings; (4) the total wages paid; (5) the total weekly premium pay for overtime hours; (6) the weekly or monthly amounts of tips received by employees; (7) the amount by which the wages of each tipped employee have been deemed increased by tips; and (8) the hours worked and total payment for both tipped and non-tipped work.  *See* 29 C.F.R. §§ 516.2, 516.5, 516.28.  *See also Heng Chan v. Sung Yue Tung Corp.,* 03 Civ. 6048 (GEL), 2007 U.S. Dist. LEXIS 7770, *66-67 (S.D.N.Y. Feb. 1, 2007) (same).  Employers are required to maintain these records for six years.

Nevertheless, Defendant readily admits that it kept no records whatsoever of the hours its employees worked.  Each week, Petros Dafnos – Westway's general manager for the past five years – prepared the employees' schedule and posted it in the restaurant's kitchen.  (Dafnos Dep. 22:10-17)   There was no method for employees to sign in or out or otherwise record their time at work.  Employees did not mark up the posted schedule to show whether they worked more or less than their scheduled shifts.  (Dafnos Dep. 27:15 – 28:8)  Nor is there any record of tips earned by tipped employees.  Other than the handwritten schedules that were thrown in the trash at the end of the week, Westway admitted that it never created or kept records of the hours its employees worked.  (Dafnos Dep. 23:2-17, 28:4-8)    To be sure, in response to Plaintiffs' request for document production numbers 9 and 10, requests time records for Plaintiff and Class Members, Defendants replied that they possess no such documents other than payroll reports.  (Kirschenbaum Aff.  Ex. D)

At the end of each week, the company that prepared Westway's payroll would send Mr. Dafnos worksheets for him to input the employees' hours.  Mr. Dafnos would then fill out payroll worksheets for all of Westway's 25 employees ***from memory.***  He

3

only occasionally referred to the weekly shift schedules. (Dafnos Dep. 22:2-4) Mr. Dafnos relied on his memory despite the fact that he admittedly was not present at the diner every hour and day that it is open. (Dafnos Dep. 20:10-17) So if an employee worked more hours than those for which he was scheduled, someone would have to orally convey that information to Mr. Dafnos (and there was no particular method for doing so) or those hours would not make it onto the payroll worksheets. (Dafnos Dep. 20:18 – 21:17) The worksheets were then faxed to the payroll company. (Dafnos Dep. 16:4-7) Westway did not keep copies of the worksheets.

Not only are Westway's record-keeping practices – or lack thereof – in and of themselves an indisputable violation of federal and state wage-hour laws, thus making Defendant's payroll records are inherently untrustworthy, but the records themselves are implausible on their face. For example, Defendant admitted that Plaintiff (and several other servers) typically worked a nine-hour shift five days a week (putting aside for the moment that Mr. Pefanis frequently worked more than that) – totaling 45 hours per week most weeks. (Dafnos Dep. 30:4-14) Even with the deduction of a daily half-hour lunch break,[4] that still leaves 42.5 hours a week. However, looking at the payroll records for Mr. Pefanis, there is not a single entry for a 40 week plus 2.5 hours of overtime – much less a regular entry of such. (*See* Kirschenbaum Aff., Ex. C at 2023) Mr. Dafnos also acknowledged that "sometimes" Mr. Pefanis worked a sixth day for about four to five hours. (Dafnos Dep. 14:22-24) Needless to note, there are no entries whatsoever for Plaintiff – or anyone else – for six to seven hours of overtime. (*See generally*

---

[4] Although, Westway automatically deducted a half-hour lunch break each day from the total number of hours worked, Defendant had no way of keeping track of whether employees actually took their break. In fact, it was rare that employees took a full half hour break. (Pefanis Dep. 79:2-11)

4

Kirschenbaum Aff., Ex. C)  Instead, the entries for overtime for all Westway employees are suspiciously homogeneous – mostly for one or two hours and never more than three – and all of them are round numbers.

In fact, Westway admits that its employees worked overtime hours that it knew about but – for some bizarre reason – were not recorded on the payroll sheets.  Mr. Dafnos claimed that he somehow kept track of those unrecorded overtime hours in his head and then paid employees cash payments on demand for those hours.  (Dafnos Dep. 36:16 – 37:23)  Westway never made any record of these purported cash payments.  (Dafnos Dep. 37:24-25)  Plaintiff testified that he never received any such payments and that the only money he ever got from Defendant was his weekly paycheck and his nightly tips.  (Pefanis Dep. 83:4-8)

I. *HOFFMANN-LA ROCHE* **NOTICE SHOULD BE ORDERED IN THIS CASE FOR THE FLSA CLAIMS.**

The FLSA contemplates the maintenance of collective actions by similarly situated employees for an employer's violation of the provisions requiring payment of minimum wage and overtime compensation.  29 U.S.C.A. § 216(b).  Such collective actions are favored under the law because they benefit the judicial system by enabling the "efficient resolution in one proceeding of common issues of law and fact," and provide employees with the opportunity to "lower individual costs to vindicate rights by the pooling of resources."  *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *Braunstein v. E. Photographic Labs.,* 600 F.2d 335, 336 (2d Cir. 1975), *cert. denied,* 441 U.S. 944 (1979); *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 323 (S.D.N.Y. 2007).

5

This case presents a clear-cut basis for certifying a collective action because Plaintiff has alleged that all of Defendant's current and former employees are the victims of Defendants' admitted failure to comply with the FLSA.

### A. Sending Expedited Notice To "Similarly Situated" Employees Fulfills The FLSA's Broad Remedial Purposes.

Expedited notice is critical in FLSA actions. Unlike absent class members in a Rule 23 class action, potential class-member employees in a FLSA collective action must affirmatively consent (or "opt in") to be covered by the suit. 29 U.S.C.A. § 216(b). The statute of limitations continues to run on each individual's claim until she files her written consent form with the Court. 29 U.S.C.A. §§ 255, 256(b). To insure that the rights protected by the FLSA do not grow stale through lack of knowledge, the Supreme Court has ruled that courts have broad authority to facilitate early notice of the existence of the lawsuit to potential opt-in plaintiffs. *Hoffman-La Roche*, 493 U.S. at 170. Collective actions also provide plaintiffs the opportunity to "lower individual costs to vindicate rights by pooling resources." *Id.* Thus, timely distribution of a notice of pendency is crucial in an FLSA collective action.

In order to successfully move for conditional certification of a FLSA collective action, plaintiffs need only meet the "minimal burden" of making a "modest factual showing" that "they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Dumitrescu v. Mr. Chow Enters.*, No. 07 Civ. 3601(PKL), 2008 WL 2600667, *3 (S.D.N.Y. June 30, 2008); *Francis v. A & E Stores, Inc.*, No. 06 Civ. 1638(CLB)(GAY), 2008 WL 2588851, *2 (E.D.N.Y. June 26, 2008); *Fasanelli*, 516

F. Supp. 2d at 321; *Gjurovich v. Emmanuel's Marketplace, Inc.,* 282 F. Supp. 2d 91, 04 (S.D.N.Y. 2003).[5]

Here, Plaintiff has met his "minimal burden" through his allegations in the Complaint, his deposition testimony and the admissions of Defendant during discovery regarding Defendant's failure to pay its employees for overtime and for failing to make or maintain records of the hours worked. "While this normally requires a "modest factual showing" that the plaintiff and the potential plaintiffs were victims of a common policy or plan violating FLSA, it may be appropriate in some cases to find plaintiffs and potential plaintiffs similarly situated based simply on plaintiffs' "substantial allegations" that they and potential plaintiffs were common victims of a FLSA violation, particularly where defendants have admitted that the actions challenged by plaintiffs reflect a company-wide policy." *Damassia v. Duane Reade, Inc.*, 04 Civ. 8819 (GEL), 2006 U.S. Dist. LEXIS 73090, *9 (S.D.N.Y. Oct. 4, 2006) (internal citations omitted). *See Doucoure v. Matlyn Food, Inc.*, 554 F. Supp. 2d 369, 374 (E.D.N.Y. 2008) ("Because the allegations in the Complaint are sufficient to state a cause of action under the FLSA and adequate to maintain the case as a collective action, and because [the defendant's] objections are premature, [the plaintiff] may circulate the attached modified notice of pendency to his proposed class.").

---

[5] That there has been some discovery in this case does not move the case to the second more stringent review standard. *See Hallissey v. America Online, Inc.*, 99-CIV-3785 (KTD), 2008 U.S. Dist. LEXIS 18387, *4 (S.D.N.Y. Feb. 19, 2008) ("Although several depositions have been taken and numerous documents produced, it is not necessary to engage in the second tier of analysis with the more stringent standard here as such scrutiny is applied 'only to *'post discovery'* determinations, 'usually precipitated by a defendant's motion for decertification of the class,' and not by a § 216(b) motion.'") (citations omitted); *Cuzco v. Orion Builders, Inc.*, 477 F. Supp. 2d 628, 632 & n.3 (S.D.N.Y. 2007) ("[E]ven though discovery is underway, it would be inappropriate at this time to attempt to make more than the first-step certification decision."); *Toure v. Central Parking Systems of New York*, No. 05 Civ. 5237(WHP), 2007 WL 2872455, *4 (S.D.N.Y. Sept. 28, 2007) (same).

In *Williams v. Twenty Ones, Incorporated,* the court found granted the plaintiffs' conditional certification motion finding that "the documentary evidence of the Club's not paying proper overtime wages . . . makes proceeding by way of a collective action particularly appropriate here." Index No. 07cv3978 (LAP), 2008 WL 2690734, *1 (S.D.N.Y. June 30, 2008) (S.D.N.Y. June 29, 2008). Similarly, in this case, the Court need not rely solely on Plaintiff's allegations of wrongdoing, because Westway has openly admitted that it subjected ***all*** of its employees to the same unlawful practice of failing to create or maintain records of hours worked as well as its incredible claim that it made unrecorded cash payments to employees for unrecorded overtime hours. As the court stated in *Guzman v. VLM, Incorporated* (on less evidence than is present here), "[i]f . . . the allegation of a statement by [defendant] that all bakery employees are paid in a manner similar to [plaintiff] are merely conclusory, . . . it is difficult to see what quantum of evidence would suffice to make the requisite 'modest factual showing.'" No. 07-CV-1126 (JG)(RER), 2007 WL 2994278, *4 (E.D.N.Y. Oct. 11, 2007). Moreover, a defendant's "common policy of failure to keep records" specifically has been found to satisfy 216(b)'s similarly situated requirement. *Id.* at *2. *See Iriarte v. Redwood Deli & Catering, Inc.*, No. CV-07-5062 (FB)(SMG), 2008 WL 2622929, *2 (E.D.N.Y. June 30, 2008) (granting 216(b) motion where "defendant indicated in its discovery responses that it has no documents reflecting plaintiff's wages, salary or hours worked").

Indeed, Defendant's abject failure to maintain any record of the hours worked by the putative class members provides yet another common element to their claims, because all the collective action members will be subject to a lower burden of proof in establishing their claims to unpaid wages and overtime. If an employer fails to maintain appropriate records, then the employees are entitled to a lesser burden of proof with

8

respect to their claims for unpaid wages, which they may satisfy by testifying at trial based upon their general recollection as to the hours they worked and the wages they are owed.  "[W]here the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes . . . the solution . . . is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work."  *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687-88 (1946), *superceded on other grounds, IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005); *Ramirez v. Rifkin*, No 06-CV-6169 (JFB) (WDW), 2008 U.S. Dist. LEXIS 48238 (E.D.N.Y. June 23, 2008) (same); *Jankowski v. Castaldi*, 01-cv-0164 (SJF)(KAM), 2006 U.S. Dist. LEXIS 4237 (E.D.N.Y. Jan. 11, 2006) (same); *Chan,* 2007 U.S. Dist. LEXIS 7770, at *69 (same).

In determining whether potential opt-in plaintiffs may be similarly situated, courts do not weigh the merits of the underlying claims.  *See, e.g., Dumitrescu*, 2008 WL 2600667 at *3 ("'[T]he court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations' at this preliminary step."); *Francis,* 2008 WL 2588851 at *2 (same); *Lynch v. United Services Auto. Ass'n*, 2007 WL 1288582, at *11 (S.D.N.Y. April 26, 2007) (same).  "'The proper inquiry in a § 216(b) determination is whether plaintiffs are similarly situated *with respect to their allegations that the law has been violated.*'"  *Hallissey*, 2008 U.S. Dist. LEXIS 18387 at *6 (original emphasis; citations omitted).  *See Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005) (same).

Conditional certification and notice are appropriate here for all the Covered Employees.  "Even if all the plaintiffs 'turn out *not* to be similarly situated, notification at this stage, rather than after further discovery, may enable more efficient resolution of the

9

underlying issues in [the] case.'" *Dumitrescu*, 2008 WL 2600667 at *4 (citation omitted).

Once the court determines that potential opt-in plaintiffs may be similarly situated for the purposes of authorizing notice, the court "conditionally certifies" the collective action. Plaintiffs then may send court-approved notice to potential members who may elect to "opt-in" pursuant to section 216(b) by filing written consents.

### B. Discovery Of Names, Addresses And Telephone Numbers Is Proper And Necessary Under H*offman-Laroche*.

It is appropriate for courts in collective actions to order the discovery of names and addresses of potential collective members. *Lee v. ABC Carpet & Home,* 236 F.R.D. 193, 202 (S.D.N.Y. 2006) (citing *Hoffman-La Roche*, 493 U.S. at 171). *See Fasanelli*, 516 F. Supp. 2d at 323-4 (ordering discovery of names and addresses of potential opt-ins); *Anglada v. Linen's 'N Things,* No. 06-cv-12901, 2007 U.S. Dist. LEXIS 39105, *22 (S.D.N.Y. Apr. 26, 2007) (same), *adopted without opinion,* 2007 U.S. Dist. LEXIS 38918 (S.D.N.Y. May 22, 2007); *Cuzco,* 477 F. Supp. 2d at 637 (same).

Plaintiffs therefore request that, in addition to entering an order granting conditional certification and approving Plaintiff's proposed notice, this Court also order Defendant to produce to Plaintiffs the following within ten days of its order: a computer readable list of all hourly employees employed from three years prior to the entry of an order to the present including: name, last known home address, home telephone number, social security number, and employee number.

Plaintiff requires the social security of covered employees so that Plaintiff's counsel can perform a skip trace for all notices that were returned as undeliverable because of a change of address. Based on Plaintiff counsel's experience, a large percentage of consent forms are typically returned as undeliverable, and the only to locate

10

these employees is by performing a search using the social security numbers. Plaintiffs are willing to execute a stipulation of confidentiality regarding the numbers. *See Patton v. Thomson Corp.,* 364 F. Supp. 2d 263, 268 (E.D.N.Y. 2005) (requiring the discovery of social security numbers subject to entry of a confidentiality agreement).

### C. The Proposed Notice Is Fair And Adequate.

Attached as Exhibit A hereto is Plaintiff's proposed judicial notice. The proposed notice provides clear instructions on how to opt-in, and accurately states the prohibition against retaliation or discrimination for participation in an FLSA action. As required, it is "timely, accurate, and informative." *See Hoffmann-La Roche*, 493 U.S. at 172. It is carefully drafted to mirror notice forms that this Court has approved in previous cases. *See Fasanelli*, 516 F. Supp. 2d at 323-4. The proposed notice achieves the goal of providing potential opt-ins with accurate and timely notice concerning the pendency of the collective action, and should be adopted.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant his motion, thereby conditionally certifying this case as a FLSA class action under 29 U.S.C. § 216(b) and authorizing dissemination of notice to the prospective collective action members.

Dated: New York, New York
August 22, 2008

        Respectfully submitted,

        JOSEPH & HERZFELD LLP
        By:   /s/ D. Maimon Kirschenbaum
              D. Maimon Kirschenbaum (DK-2338)
              Diane Hester (DH-4337)

        Charles E. Joseph (CJ-9442)
        757 Third Avenue
        25th Floor
        New York, NY 10017
        Tel: (212) 688-5640
        Fax: (212) 688-2548
        *Attorneys for Plaintiff, proposed collective*
        *action members and proposed class*

**EXHIBIT A**

NOTICE OF PENDENCY OF FLSA LAWSUIT

From:   Joseph & Herzfeld, LLP, Attorneys at Law

To:   All non-exempt hourly employees of Westway Diner, Inc. ("Westway" or "Defendant"), including kitchen staff, waiters, busboys, and runners, that worked for Defendants within the last three years.

Re:   Collective action lawsuit against Westway Diner under the federal Fair Labors Standards Act- Pefanis et al v. Westway Diner, Inc., United States District Court, SDNY, Index No. 08-cv-0002 (DLC)

The purpose of this Notice is to advise you of a lawsuit under the federal Fair Labor Standards Act that has been filed against Westway Diner and to advise you of the legal rights you have in connection with that suit.

1. DESCRIPTION OF THE LAWSUIT.

Andreas Pefanis, on behalf of himself and all others similarly situated, filed this lawsuit against Westway on January 2, 2008. The law firm of Joseph & Herzfeld, LLP represents the plaintiffs in this lawsuit.

The claims in this lawsuit made under the federal Fair Labor Standards Act allege primarily that Defendants did not pay hourly employees for all hours worked and failed to pay employees' minimum and overtime wages.

2. YOUR RIGHT TO MAKE A CLAIM IN THIS LAWSUIT.

If at any time within the last three years you worked as an hourly employee with Westway and you believe that you were subject to any of the illegal practices described above, you have the right to assert claims under the Fair Labor Standards Act ("FLSA") in this lawsuit.

To assert the FLSA claim you must sign a written Consent to be a "party-plaintiff" in the lawsuit. This form will be filed in the Court. It is entirely your own voluntary decision whether or not to sign and file the consent. Please be advised that, if you do file the consent and thus make an FLSA claim, it is against the law for Westway to retaliate against you for doing so.

3. <u>HOW TO MAKE A CLAIM IN THIS LAWSUIT.</u>

Attached to this Notice is a form entitled "Consent to Make a Claim in Lawsuit under Federal Fair Labor Standards Act (FLSA)." In order to make an FLSA claim in the lawsuit, fill out the form, sign it, and fax, mail or overnight it to:

D. Maimon Kirschenbaum
Joseph & Herzfeld, LLP
Attorneys at Law
757 Third Avenue, Suite 2500
New York, NY 10017
Phone: (212) 688-5640
Fax: (212) 688-2548
Email: maimon@jhllp.com

If you sign and mail the form, it will be filed with the court and you will become a "party plaintiff." Thus you will become a client of the above attorneys, who represent the plaintiffs in the lawsuit. The attorneys' fee arrangement for this case provides that Plaintiffs' counsel are handling this matter on a contingency basis, *i.e.,* that the attorneys' fees and costs will be determined on a percentage basis based on the recovery on behalf of Plaintiffs and that Plaintiffs will not be responsible for fees and/or costs if there is no recovery for the Plaintiffs. The agreement further provides that at the conclusion of the case, Plaintiffs' counsel will make an application to the Court for the recovery of fees and costs, that the Court has discretion of the amount of fees to award, and that the fees may be as much as 33% of any settlement fund or judgment, after the deduction of costs and expenses. Also enclosed is a form entitled "Client Information." It is to enable these attorneys to contact you. To furnish this information to the attorneys, fill out the form and mail it to the attorneys at the above address.

For your convenience, a self-addressed, postage paid envelope is enclosed. If you have any questions with respect to this suit, you may call Maimon Kirschenbaum at Joseph & Herzfeld, LLP, phone number (212) 688-5640.

4. <u>THE LEGAL EFFECT OF FILING OR NOT FILING THE CONSENT FORM.</u>

If you do not file a consent form, you will not receive any money or other relief for FLSA claims in the lawsuit. If you do file a consent form, you will be bound by the judgment of the court on all FLSA issues in the case, win or lose.

  5. <u>ALTHOUGH THE COURT HAS APPROVED THE SENDING OF THIS NOTICE, THE COUT EXPRESSES NO OPINION ON THE MERITS OF THIS LAWSUIT.</u>

**PLEASE DO NOT CALL OR WRITE THE COURT ABOUT THIS NOTICE.**

Dated: _____

                   D. Maimon Kirschenbaum (DK-2338)
                   Joseph & Herzfeld LLP
                   757 Third Avenue
                   25th Floor
                   New York, NY 10017
                   Tel: (212) 688-5640
                   Fax: (212) 688-2548

# CONSENT TO SUE UNDER
# FEDERAL FAIR LABOR STANDARDS ACT

     I am an employee currently or formerly employed by WESTWAY DINER, INC. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Professional Services Agreement signed by the named plaintiffs in this case.

_____
Full Legal Name (Print)

_____
Signature

_____
Date

Client Information

Name: _____

Telephone Number(s): _____

_____