D. Maimon Kirschenbaum (DK-2338)
Denise Schulman (DS-8066)
JOSEPH, HERZFELD, HESTER & KIRSCHENBAUM, LLP
757 Third Avenue
25th Floor
New York, NY 10017
Tel: 212-688-5640
Fax: 212-688-2548

*Attorneys for Plaintiff, collective members, and proposed class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
**ANDREAS PEFANIS on behalf of**
**themselves and others similarly situated,**

          **Plaintiff,**

          **INDEX NO: 08 CIV. 002(DC)**

  **v.**

**WESTWAY DINER, INC.**

          **Defendants.**
-----------------------------------------------------------x

## PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CLASS CERTIFICATION PURSUANT TO FED. R. CIV. P. 23

# INTRODUCTION

As discussed in Plaintiff's motion for class certification, Plaintiff easily satisfies the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3) ("Rule 23"). For the reasons set forth below, Defendant's response grossly misinterprets the numerosity, commonality, typicality, and predominance requirements of Rule 23. Accordingly, Plaintiff's motion for class certification should be granted.

# ARGUMENT

## I. DEFENDANT HAS FAILED TO REBUT THE PRESUMPTION THAT NUMEROSITY IS SATISFIED

Defendant's argument that Plaintiffs do not meet the numerosity requirement is off-base. Numerosity is presumed where a putative class has forty (40) or more members. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). In this case, the class exceeds fifty (50) people, and Defendant has failed to rebut the presumption that the class is so numerous that joinder is impracticable.

Courts routinely end the numerosity analysis upon determining that a putative class exceeds forty (40). *E.g., Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 156 (S.D.N.Y. 2008); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 370 (S.D.N.Y. 2007); *Daniels v. City of New York*, 198 F.R.D. 409, 417 (S.D.N.Y. 2001). To be sure, Defendant fails to cite any authority rejecting class certification where a putative class indisputably consisted of forty members. It is "[w]here the putative class contains between twenty-one and forty members" that courts consider the factors identified in Defendant's brief. *Toure v. Central Parking Sys. of N.Y.*, No. 05 Civ. 5237, 2007 U.S. Dist. LEXIS 74056, at *14 (S.D.N.Y. Sept. 28, 2007). Indeed, Defendant cites just one district court decision in this Circuit finding that a putative class

1

consisting of more than forty (40) members did not satisfy the numerosity requirement.[1] *Elliott Assocs. v. J. Henry Schroder Bank & Trust Co.*, 655 F. Supp. 1281 (S.D.N.Y. 1987). However, the court there was concerned that the class would consist of less than forty members if certified. Specifically, the putative class consisted of 48 members, but the parties stipulated that two class members would opt out of the class, and an additional twelve members were "aligned with" the defendant corporation, making it likely that they would opt out. *Id.* at 1285. In addition, the total value of the putative class members' claims was based on substantial investments totaling almost $25 million, and putative class members would likely have pursued their individual claims even if the class was not certified. *Id.*

By contrast, in this case, there are indisputably forty members of the putative class. There are no other cases pending against Defendant arising out of the same facts. In addition, class members here are low wage workers who likely lack the financial resources to bring individual claims of relatively low value. *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, (W.D.N.Y. 2005) (certifying class of 28 and noting that "[t]he small recoveries expected to be received by these individuals renders it less likely that, without the benefit of class representation, they would be willing to incur the financial costs and hardships of separate litigations"); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 85-86 (S.D.N.Y. 2001) (finding numerosity satisfied and noting that "the members of this group would not be likely to file individual suits. Their lack of adequate financial resources or access to lawyers, their fear of reprisals, the transient nature of their work, and other similar factors suggest that individual suits

---

[1] The size of the putative class in *Primavera Familienstiftung v. Askin*, 178 F.R.D. 405 (S.D.N.Y. 1998), also cited by Defendant, is unclear. In that case, putative class representatives asserted class sizes of 118 or 138 members, but the court noted that there were 38 to 40 potential plaintiffs. *Id.* at 410, 411. However, even if the class had 138 members, that case is inapposite here. It was a securities fraud action in which there were already five actions pending regarding the same claims when plaintiffs moved for class certification. *Id.* at 410. In addition, putative class members had significant financial resources and had invested from $100,000 to tens of millions of dollars with the defendants. *Id.* at 411.

2

as an alternative to a class action are not practical"). Thus, even under the standard Defendant propounds, the putative class easily meets the numerosity requirement. (Def.'s Mem. at 7.)

The fact that only one putative class member has opted in to the FLSA collective action has no bearing on whether numerosity is satisfied because it says nothing about the size of the putative class. In *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330 (S.D.N.Y. 2004), only three people in a putative class of several hundred opted in to the FLSA action. *Id.* at 342. However, the court found that because the plaintiff "provided evidence tending to suggest that potential class members may have failed to join the FLSA collective action because they feared reprisal, particularly given their citizenship status, it is reasonable to believe that many employees fall within the ambit of the defined class." *Id.*

Here, Plaintiff and opt-in plaintiff Salvador Peralta have submitted declarations attesting to putative class members' fears of reprisal. Mr. Peralta stated that "a current employee told me that Kyriakos Dafnos told employees of Westway Diner that the notice to opt-in to this lawsuit . . . was garbage. He also told me that some employees were afraid to opt-in to this lawsuit because of their immigration status." (Peralta Decl. ¶ 8.) Similarly, Mr. Pefanis stated, "[c]urrent Westway employees have told me that they are afraid to join this lawsuit because they do not want to lose their jobs." (Pefanis Decl. ¶ 9.) This Court has previously recognized that "[c]urrent employees may hesitate to join a lawsuit against their employer for many reasons, such as fear of retaliation."[2] *Pefanis v. Westway Diner, Inc.*, No. 08 Civ. 002, 2008 U.S. Dist. LEXIS 81082, at *3-4 (S.D.N.Y. Oct. 8, 2008); *see also Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 203 (S.D.N.Y. 2006) (stating that fear of reprisal, the high cost of prosecuting individual

---

[2] As noted in the Complaint, in the face of wage and hour violations "[c]urrent employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks." (¶ 15.)

3

actions, and the low individual recovery amounts were "compelling" reasons for finding joinder impracticable); *Smellie v. Mt. Sinai Hosp.*, No. 03 Civ. 0805, 2004 U.S. Dist. LEXIS 24006, at *12 (S.D.N.Y. Nov. 24, 2004) (finding joinder impracticable where "class members who still work for [defendant] may be reluctant to serve as named plaintiffs in an action against their employer for fear of reprisals"); *Scott v. Aetna Servs., Inc.*, 210 F.R.D 261, 267 (D. Conn. 2002) (finding numerosity satisfied where a small number of class members opted into the FLSA action and noting that "in light of evidence that potential class members failed to join the FLSA class action because the feared reprisal, the Court declines to find that every [individual] who desires to participate in this litigation has already joined"). Accordingly, the small number of opt in plaintiffs to the FLSA action is no bar to a finding of numerosity.

## II. COMMONALITY IS SATISFIED BECAUSE ALL CLASS MEMBERS WERE SUBJECT TO THE SAME COMPENSATION PRACTICES AND POLICIES

Defendant's brief does not and cannot refute that Petros Dafnos's deposition shows that all class members were subject to the same compensation practices and policies. Specifically, Mr. Dafnos stated that he records all employees' hours in the same way and at the same time. (Dafnos Dep. 17:16-19:24.) Defendant did not keep contemporaneous time records for any class members. (*Id.* at 28:15-28:8.) No employees clocked-in or signed-in to work. (*Id.* at 20:6-9.) No employees received spread of hours pay. (*Id.* at 16-24.) Defendant concedes that all employees' hours were recorded weekly, and all employees followed the same procedure when they did not work in accordance with the schedule. (Def.'s Mem. at 9.) It is abundantly clear that all of Defendant's employees were subject to common practices and policies.

Contrary to Defendant's implication, Plaintiff did not cite to Mr. Dafnos's deposition to show "that the payroll procedures were designed to avoid paying overtime to all the employees." (Def.'s Mem. at 9.) Rather, Mr. Dafnos's deposition establishes that Plaintiff and putative class

members were all subject to the same payroll procedures. This satisfies Rule 23(a)(2)'s commonality requirement; since Plaintiff and putative class members were subject to the same procedures, there are common questions of law and fact regarding the legality of those procedures and whether Plaintiff and putative class members were compensated properly.

The common practices and policies described in Mr. Dafnos's deposition alone more than suffice to meet Rule 23(a)(2)'s liberal requirement that class members share a single common issue of fact or law. *Lee*, 236 F.R.D. at 203. In addition, the declarations of Mr. Pefanis and Mr. Peralta further support a finding of commonality. Both men stated that they were not properly compensated for all of the overtime they worked, (Pefanis Decl. ¶ 6; Peralta Decl. ¶ 6), and that they did not receive spread of hours pay. (Pefanis Decl. ¶ 7; Peralta Decl. ¶ 7.) Mr. Pefanis also stated that other workers told him they were not properly compensated for overtime. (Decl. ¶ 8.) Defendant's attack on these declarations as containing hearsay is unavailing. Plaintiffs could not produce additional affidavits because of class members' fears of retaliation discussed in Section I, *supra*. Moreover, courts may rely on affidavits or declarations containing hearsay in conducting a Rule 23 analysis. *Mendoza v. Casa de Cambio Delgado, Inc.*, No. 07 Civ. 2579, 2008 U.S. Dist. LEXIS 61557, at *14 (S.D.N.Y. Aug. 12, 2008); *Guzman v. VLM, Inc.*, No. 07 Civ. 1126, 2008 U.S. Dist. LEXIS 15821, at *18 (E.D.N.Y. March 2, 2008). Therefore, the commonality requirement is satisfied.

### III. PLAINTIFF'S CLAIMS ARE TYPICAL OF THE CLASS

Defendant's only argument against a finding of typicality is that Plaintiff Pefanis has asserted a claim for illegal deductions that Defendant contends is not shared by class members. (Def.'s Mem. at 10.) This argument fails for two reasons. First, Defendant incorrectly states that the First Amended Complaint does not allege that class members other than Plaintiff Pefanis

suffered illegal deductions. Rather, the Complaint states, "[u]pon information and belief, other employees who worked for Defendant and who are . . . members of the Class were subjected to the same policies and practices and have sustained similar losses of compensation for numerous hours worked on behalf of Defendant." (¶ 27.) This paragraph thus alleges that class members were subject to *all* of the wage and hour violations noted earlier in the complaint, including illegal deductions.

Even assuming, *arguendo*, that Plaintiff Pefanis was the only class member from whom Defendant made illegal deductions, a finding of typicality is appropriate. Defendant sets forth no reason why a defense to the illegal deductions claim would "threaten to become the focus of the litigation." *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990). The main issues in this case and likely the most valuable claims revolve around the questions of whether Defendant paid employees for all hours worked, whether Defendant properly compensated employees for overtime, and whether Defendant paid employees the spread of hours premium. These claims "arise[] from the same course of events and each class member [will] make[] similar legal argument to prove the defendant's liability." *Robidoux*, 987 F.2d 931, 936 (2d Cir. 1993). Accordingly, Plaintiff's claims are typical of those of the class.

### IV. COMMON ISSUES OF LAW AND FACT WITH RESPECT TO LIABILITY PREDOMINATE OVER INDIVIDUALIZED ISSUES REGARDING DAMAGES

Defendant's argument that individualized inquiries into class members' wages and hours worked would predominate over common issues of law and fact has been soundly rejected by courts in the Second Circuit. The inquiries Defendant refers to are relevant only to the issue of damages, not to liability. (Def.'s Mem. at 11-12.); *see Torres v. Gristede's Operating Corp.*, No.

6

04 Civ. 3316, 2006 U.S. Dist. LEXIS 74039, at *52-53 (S.D.N.Y. Sept. 28, 2006) (finding that common issues with respect to liability predominate "over any individual calculations of overtime wages Defendants may owe, if liability is found").

In fact, because all class members were subject to the same compensation policies and practices, Defendant cannot identify individualized issues with respect to liability. *Cf. Guzman*, 2008 U.S. Dist. LEXIS 15821, at *24 (finding predominance satisfied "where the central issue is whether the defendants had a uniform policy or practice of denying overtime and spread-of-hours compensation to its employees"). "Individual questions with respect to damages will not defeat class certification . . . unless that issue creates a conflict which goes to the heart of the lawsuit." *Ansoumana*, 201 F.R.D. at 86 (internal quotation omitted); *In re Visa Check/Mastermoney Antitrust Litigation*, 280 F.3d 124, 139 (2d Cir. 2001) ("Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues."); *Mendoza*, 2008 U.S. Dist. LEXIS 61557, at *24 (stating that "[c]ourts have repeatedly stated that differences in the amount and recoverability of damages do not defeat predominance. . . . [I]t is irrelevant that Plaintiffs will need to present individual evidence to demonstrate their work schedules, meal periods, compensation, and sick time" (internal quotation omitted)); *Iglesias-Mendoza*, 239 F.R.D. at 373 (noting that Defendant's argument "that individualized questions raised by any of defendant's purported defenses will predominate over questions common to the class" is "silly"); *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144 (S.D.N.Y. 2002). Defendant has not identified any such issues. Rather, the individualized issues here with respect to damages are typical of those in wage and hour class actions and do not predominate over the common issues of law and fact.

## CONCLUSION

For the foregoing reasons, all of the Rule 23 requirements are satisfied, and Plaintiff's motion for class certification should be granted.

Dated: June 9, 2009
New York, New York

Respectfully submitted,

/s/ D. Maimon Kirschenbaum
D. Maimon Kirschenbaum (DK-2338)
Denise Schulman (DS-8066)

JOSEPH, HERZFELD, HESTER &
KIRSCHENBAUM, LLP
757 Third Avenue
25th Floor
New York, NY 10017
Tel: 212-688-5640
Fax: 212-688-2548

*Attorneys for Plaintiff, collective members, and proposed class*

8