UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ANDREAS PEFANIS on behalf of
themselves and others similarly situated,

                Plaintiff,                INDEX NO: 08 CIV. 002(DC)

  v.

WESTWAY DINER, INC.

                Defendants.
-----------------------------------------------------------x

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DECERTIFY THE RULE 23 CLASS AND THE FLSA COLLECTIVE ACTION AND FOR PARTIAL SUMMARY JUDGMENT

D. Maimon Kirschenbaum (DK 2338)
Denise A. Schulman (DS 8066)
Joseph, Herzfeld, Hester & Kirschenbaum LLP
757 Third Avenue, 25th Floor
New York, NY  10017
Tel: (212) 688-5640
Fax: (212) 688-2548
maimon@jhllp.com

*Attorneys for Plaintiff, collective members, and the class*

## TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ............................................................................................. 1

II. PROCEDURAL HISTORY ................................................................................................... 1

III. STATEMENT OF FACTS .................................................................................................... 3

IV. ARGUMENT ........................................................................................................................ 5

   A. THE CLASS SHOULD NOT BE DECERTIFIED BECAUSE COMMON QUESTIONS PREDOMINATE ........................................................................................ 5

   B. THE FLSA COLLECTIVE ACTION SHOULD NOT BE DECERTIFIED BECAUSE PLAINTIFF AND THE OPT-IN PLAINTIFF ARE SIMILARLY SITUATED ........................................................................................................................ 9

   C. SERGIO REYES LATENCHE AND HILARIO CARDOSO SHOULD NOT BE EXCLUDED WITH CLASS BECAUSE NOTICE WAS SENT TO THEM IN ACCORDANCE WITH DUE PROCESS .............................................................................. 11

V. CONCLUSION .................................................................................................................... 13

I.  **PRELIMINARY STATEMENT**[1]

Defendant Westway Diner, Inc. ("Defendant" or "Westway") has for years had a widespread practice of failing to pay its employees the minimum wage, overtime, and spread of hours pay to which they are entitled under federal and New York law. This action to recover those unpaid wages is ripe for class and collective treatment because Defendant's employees have similar claims that raise identical legal issues and are subject to common proof. The Court recognized this in certifying the New York claims as a class action pursuant to Fed. R. Civ. P. 23 ("Rule 23") and the federal claims as a collective action pursuant to 29 U.S.C. § 216(b) ("§ 216(b)").

Now, unable to show that it has compensated employees in accordance with the law, Defendant instead asks the Court to decertify the class and collective it previously approved. However, in seeking decertification, Defendant merely reiterates arguments that the Court rejected at the certification stage without pointing to any new evidence that would warrant a reconsideration of the Court's earlier decisions. In addition, Defendant's contention that two class members should be excluded from the class because they allegedly did not receive notice of the class action is based on a misinterpretation of due process requirements that is contrary to settled law.

For the reasons set forth below, Defendant's motion should be denied.

II.  **PROCEDURAL HISTORY**

Plaintiff Andreas Pefanis filed this collective and class action against Defendant Westway Diner, Inc. ("Westway") on January 2, 2008 alleging claims under the Fair Labor Standards Act ("FLSA") for unpaid minimum wage and overtime compensation and failure to

---

[1] Plaintiffs submit with this Memorandum the May 21, 2010 Declaration of Denise A. Schulman and attached exhibits. All references herein to "Def's. Exs." are to exhibits submitted by Defendant in support of its motion.

keep records and claims under the New York Labor Law for unpaid minimum wage, overtime, and spread of hours pay. (Schulman Ex. 10.) On July 10, 2008 Plaintiff filed an Amended Complaint adding a claim for unlawful deductions under the New York Labor Law. (Def.'s Ex. A.)

On October 8, 2008, this Court conditionally certified the FLSA minimum wage and overtime claims as a collective action pursuant to 29 U.S.C. § 216(b). *Pefanis v. Westway Diner, Inc.*, No. 08 Civ. 002, 2008 U.S. Dist. LEXIS 81082. Plaintiff's counsel sent Court-approved notice to the last known addresses of all putative collective members, as identified by Defendant, by first class mail. (Schulman Decl. ¶ 2.) One person, Salvador Peralta, opted in to the collective action.[2] (Def.'s Mem. at 2.)

On August 7, 2009, the court certified the New York law minimum wage, overtime, spread of hours, and unlawful deductions claims as a class action pursuant to Fed. R. Civ. P. 23. (Schulman Ex. 11.) The class included "all service employees who worked at Westway since January 2, 2002 to the present, including all kitchen staff, servers, bussers, and runners." (Schulman Ex. 13.) Class counsel sent Court-approved notice to all class members identified by Defendant, including Sergio Reyes Latenche and Hilario Cardoso, by first class mail to their last known addresses as provided by Defendant. (Schulman Decl. ¶ 4.) The notices that were sent to Mr. Latenche and Mr. Cardoso were returned to class counsel as undeliverable. (Schulman Decl. ¶ 4.) 22 of Defendant's then-current employees, including Mr. Latenche and Mr. Cardoso, submitted exclusion request forms to Petros Dafnos, Defendant's general manager. (Schulman Ex. 12; Schulman Ex. 14, 4:23-5:13, 7:5-6.) These exclusion request forms were delivered to class counsel by Defendant's counsel. (Schulman Decl. ¶ 5.) The Court invalidated these exclusion request forms, finding that Westway employees believed "that they could curry favor

---

[2] Mr. Pefanis and Mr. Peralta are hereinafter referred to collectively as, "Plaintiffs."

with their boss by opting out of the class" and that the "opt out pattern [was not] reliable." (Schulman Ex. 14, 23:14, 19-20.) *Pefanis v. Westway Diner, Inc.*, No. 08 Civ. 002, 2009 U.S. Dist. LEXIS 121378 (Dec. 29, 2009). Class counsel then sent Court-approved corrective notice to the class members who had opted out, including Mr. Latenche and Mr. Cardoso, and Defendant posted the corrective notice in Westway. (Schulman Decl. ¶ 7; Schulman Ex. 2, 90:12-91:4.) Prior to this mailing, Defendant's counsel provided class counsel with an updated address for Mr. Cardoso, to which class counsel mailed the corrective notice. (Schulman Decl. ¶ 7.) Mr. Latenche's and Mr. Cardoso's corrective notices were returned to class counsel as undeliverable. (Schulman Decl. ¶ 8.) Of the 22 class members who initially submitted exclusion request forms, just 15 opted out of this lawsuit after the mailing and posting of the corrective notice. (Def.'s Ex. E.)

### III.  STATEMENT OF FACTS

Defendant Westway Diner, Inc. ("Westway") owns and operates the Westway Diner in midtown Manhattan. Throughout the period at issue in this lawsuit, Westway has been open 24 hours per day, seven days per week. (Schulman Ex. 2, 17:23-18:4.) Petros (or Peter) Dafnos has been Westway's general manager since 2003, prior to which he was the restaurant's night manager. (*Id.* at 8:23-9:4, 12:3-5, 12:22-23, 13:3.) In addition to management, Westway employs waiters, busboys, and cashiers in the front of the house, and a chef, salad man (who helps prepare food), grillmen, and dishwashers in the back of the house. (*Id.* at 15:2-24, 32:12-15, 34:13-14.) Plaintiff Andreas Pefanis was employed by Defendant as a waiter from approximately November 2006 to November 2007 (Schulman Ex. 3, 8:10-17), and opt-in

Plaintiff Salvador Peralta was employed by Defendant as a salad man from approximately 1999 to April 2008.[3] (Schulman Ex. 4, 20:5-8, 22:5-16.)

The FLSA and New York law require Westway to pay class members a minimum wage for all hours worked up to 40 per week and one and a half times their regular rate for hours in excess of 40 worked per week. 29 U.S.C. §§ 206, 207; N.Y. Lab. Law § 652; N.Y. Comp. Codes R. & Regs. tit. 12, §§ 137-1.2, 137-1.5. Throughout the class period, it has been Westway's widespread practice not to pay class members in accordance with these laws. Class members have worked significant amounts of overtime. For instance, Mr. Pefanis regularly worked over 50 hours per week, and Mr. Peralta typically worked 60 hours per week. (Schulman Ex. 3, 69:24-71:13; Schulman Ex. 4, 31:2-10.) Mr. Dafnos testified that grillmen usually work 60 hours per week (Schulman Ex. 2, 35:13-15), and waiters, dishwashers, busboys, and grillmen have all testified to working more than 40 hours a week. (Schulman Ex. 5, 10:25-11:9 (waiter); Schulman Ex. 6, 9:18-20, 12:12-20, 15:4-12 (busboy and dishwasher); Schulman Ex. 7, 11:2-12:5 (busboy and grillman); Schulman Ex. 8, 7:24-8:8, 8:23-9:3 (waiter).) However, payroll records for most of the class period reflect typical payments to class members for 37 to 43 hours per week.[4] (*E.g.*, Schulman Ex. 9.) Similarly, those employees who were paid a weekly salary rather than an hourly rate were not paid an overtime premium for hours worked in excess of 40 per week. (Schulman Ex. 4, 22:20-23:17, 40:3-11.)

In addition, class members have had workdays lasting longer than ten hours, entitling them to "spread of hours" pay under New York law, which is an extra hour's pay at the New York minimum wage. N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.7. (Schulman Ex. 2, 37:20-22; Schulman Ex. 3, 77:20-24; Schulman Ex. 4, 31:2-5, 32:7-12, 36:14-19; Schulman Ex.

---

[3] Prior to working as a salad man, Mr. Peralta was a dishwasher at Westway. (Schulman Ex. 4, 20:9-11.)
[4] Westway's payroll records reflect more frequent and increased payments for overtime starting in late January 2008, after this lawsuit was filed. (Schulman Ex. 9, 2375, 2400-2402, 2467-2469.)

5, 21:4-8.) However, Mr. Dafnos testified that he has never heard of spread of hours pay, and Defendant's payroll records do not seem to reflect any spread of hours payments. (Schulman Ex. 1, 29:16-24; Schulman Ex. 9; Def.'s Ex. C, 4:5-10.)

At all relevant times, Mr. Dafnos has been responsible for preparing and submitting to Westway's payroll company the paperwork the company uses to issue paychecks. (Schulman Ex. 2, 12:13-14:4.) Until November 2009, Westway kept no contemporaneous time records for any employees, even though federal and state regulations require Westway to keep records for each employee of, *inter alia*, total daily and weekly hours worked, regular hourly rate of pay, total daily and weekly earnings, and weekly overtime premiums. 29 C.F.R. §§ 516.2, 516.5, 516.28; N.Y. Comp. Codes R. & Regs. tit. 12, 137-2.1. (Schulman Ex. 2, 22:11-23:5; Def.'s Ex. C, 3:17-19.) It was not until November 2009, approximately a month after this Court certified the class, Westway began keeping daily records of employees' start and end times each day. (Schulman Ex. 2, 22:11-21, 23:14-24:1, 44:21-45:2.) However, Westway does not keep contemporaneous records of employees' meal breaks, even though it deducts pay for meal breaks (*Id.* at 44:13-17, 45:3-6.)

IV.  **ARGUMENT**

  A.  **THE CLASS SHOULD NOT BE DECERTIFIED BECAUSE COMMON QUESTIONS PREDOMINATE**

In initially certifying the Class pursuant to Rule 23(b)(3), this Court properly found that, with respect to the New York Labor Law claims asserted in this lawsuit, common questions predominate over individual issues. (Def.'s Ex. C, 7:12-15.) Defendant has identified no evidence or theory that undermines the Court's earlier finding that predominance is satisfied and, accordingly, its motion for decertification of the Rule 23 class should be denied.

In fact, full discovery has reinforced the Court's finding that common issues predominate. Rule 23(b)(3)'s predominance requirement is satisfied where a plaintiff shows that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individual proof." *In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001) (internal quotation marks omitted; alteration in original). The primary questions for the New York Labor Law claims are whether Westway failed to pay employees (1) for all hours worked; (2) one and a half times their regular rate for hours worked in excess of 40 per week; and (3) New York's "spread of hours" pay when their workdays lasted longer than ten hours. These questions are subject to generalized proof of policies and practices that applied to all class members, and as such they predominate over individual issues.

Specifically, there is generalized proof of (1) a common process for paying all class members; (2) a common policy and practice of not paying employees one and a half times their regular rate for all hours worked in excess of 40 per week; (3) Defendant's wholesale failure to keep accurate records of class members' wages and hours worked; and (4) a failure to pay any employees spread of hours pay. This Court has already recognized that Westway used a single process, controlled by Mr. Dafnos, for paying class members. (Def.'s Ex. C, 5:11-15, 7:16-17; *see also* Schulman Ex. 2, 13:4-14:4.) Whether Westway did not pay hourly employees at all for overtime hours or, in the case of employees like Mr. Peralta who received a weekly salary, did not pay class members any overtime premium, it had a uniform practice of not paying class members for overtime in accordance with New York law. This presents a common liability issue that predominates over individualized issues. *See Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 345-46 (S.D.N.Y. 2004) (certifying a class that included both hourly employees and

6

employees who were paid a weekly salary). Westway's admitted lack of recordkeeping is common to all class members and thus places the same burden on Defendant with respect to all class members "of proving that the complaining employee was paid wages, benefits and wage supplements." N.Y. Lab. Law § 196-a(a). Moreover, Defendant's failure to keep contemporaneous time records calls into question whether it is even possible that Defendant properly paid class members for all regular and overtime hours worked, given that class members did not always work precisely the hours for which they were scheduled. (Schulman Ex. 1, 20:24-21:4; Schulman Ex. 2, 39:14-16, 40:2-4, 40:10-13.)

Mr. Dafnos' admission that he did not know that Westway was required to provide class members with an extra hour's pay at the minimum wage when their workdays exceeded ten hours is strong, generalized evidence that Westway has never paid any class member spread of hours pay, in violation of New York law. (Schulman Ex. 1, 29:16-24; Def.'s Ex. C, 4:5-10.) In addition, there appear to be no entries on Westway's payroll records for an extra hour's pay at the New York minimum wage. (*E.g.*, Schulman Ex. 9.) Defendant has admitted, and Plaintiffs and current Westway employees have confirmed,[5] that Westway employees have in fact had workdays that lasted longer than ten hours, precluding any defense that no class members ever worked spread of hours-eligible shifts. (Schulman Ex. 2, 37:20-22; Schulman Ex. 3, 77:20-24; Schulman Ex. 4, 31:2-5, 32:7-12, 36:14-19; Schulman Ex. 5, 21:4-8.)

Defendant's only argument for decertification is the conclusory statement that "[i]f the court does not decertify the class, defendants will need to raise individual defenses as to each class member's claims[.]" (Def.'s Mem. at 6.) However, Defendant fails to articulate any

---

[5] Defendant incorrectly states that Mr. Peralta always worked ten hours and therefore is not entitled to any spread of hours pay. (Def.'s Mem. at 4.) Mr. Peralta testified at deposition that although his typical work schedule was 6:00 a.m. to 4:00 p.m., six days per week, he occasionally started work early or worked past his scheduled end time. (Schulman Ex. 4, 31:2-5, 32:7-12, 36:14-19.) On such occasions, his spread of hours exceeded ten, and he is entitled to spread of hours pay.

7

defense at all, let alone any individualized defenses that would defeat class certification. In addition, this Court, the Second Circuit, and other courts in this Circuit have repeatedly and consistently rejected arguments that differences among class members relating to damages. (Def.'s Ex. C, 7:19-21.) *In re Visa/Mastermoney Antitrust Litig.*, 280 F.3d at 139 ("Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues."); *Mendoza v. Casa de Cambio Delgado, Inc.*, No. 07 Civ. 2579, 2008 U.S. Dist. LEXIS 61557, at *24 (S.D.N.Y. Aug. 12, 2008) ("Courts have repeatedly stated that differences in the amount and recoverability of damages do not defeat predominance. Therefore, it is irrelevant that Plaintiffs will need to present individual evidence to demonstrate their work schedules, meal periods, compensation, and sick time.") (internal quotation marks and citation omitted); *Guzman v. VLM, Inc.*, No. 07 Civ. 1126, 2008 U.S. Dist. LEXIS 15821, at *24 (S.D.N.Y. Mar. 2, 2008) ("If common questions of law or fact predominate regarding liability, the existence of individual questions as to damages is generally unimportant."); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 372-73 (S.D.N.Y. 2007) ("[W]hen determining whether common issues predominate, courts focus on the liability issue . . . and if the liability issue is common to the class, common questions predominate over individual ones.") (omission in original; internal quotation marks omitted). Further, under New York law, "if a jury determines that Defendants' record keeping is inadequate, Plaintiffs may be able to measure damages based on a representative sample and damages would be far less individualized." *Mendoza*, 2008 U.S. Dist. LEXIS 61557, at *25.

Accordingly, predominance is satisfied, and Defendant's motion for decertification of the Rule 23 class should be denied.

8

B.  **THE FLSA COLLECTIVE ACTION SHOULD NOT BE DECERTIFIED BECAUSE PLAINTIFF AND THE OPT-IN PLAINTIFF ARE SIMILARLY SITUATED**

In order to maintain a collective action under 29 U.S.C. § 216(b), plaintiffs must show that they are "similarly situated." 29 U.S.C. § 216(b). This standard "is considerably less stringent than the requirement of Fed.R.Civ.P. 23(b)(3) that common questions 'predominate.'" *Ayers v. SGS Control Servs., Inc.*, No. 03 Civ. 9078, 2007 U.S. Dist. LEXIS 1634, at *16 (S.D.N.Y. Feb. 27, 2007) (internal quotation marks omitted); *see also Hallissey v. Amer. Online, Inc.*, No. 99 Civ. 3785, 2008 U.S. Dist. LEXIS 18387, at *5 (S.D.N.Y. Feb. 19, 2008). The FLSA claims for unpaid minimum wage and overtime are subject to the same proofs regarding liability as the New York Labor Law minimum wage and overtime claims. Because, as described above, Plaintiff has satisfied the more demanding predominance standard of Rule 23(b)(3) with respect to the New York Labor Law claims, the two collective Plaintiffs easily satisfy § 216(b)'s "similarly situated" standard, and Defendant's motion for decertification of the FLSA collective action should be denied.

However, even if the Court finds that Rule 23(b)(3) predominance is not satisfied, Plaintiffs are plainly "similarly situated" under § 216(b), and they may maintain the FLSA claims as a collective action. Relevant factors in determining whether plaintiffs are similarly situated include "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations."[6] *Ayers*, 2007 U.S. Dist. LEXIS 19634, at *19 (internal quotation marks omitted; alteration in original); *Torres v. Gristede's Op. Corp.*, No. 04

---

[6] Some courts also consider "(1) the alleged activities of the defendant; (2) the similarities among the members of the proposed collective action; and (3) the extent to which members of the proposed action will rely on common evidence[.]" *Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 482 (E.D.N.Y. 2001). These factors overlap with the factors set forth in *Ayers v. SGS Control Servs., Inc.*, 2007 U.S. Dist. LEXIS 19634, and thus, for similar reasons, they weigh in favor of maintaining the FLSA claims in this lawsuit as a collective action.

Civ. 3316, 2006 U.S. Dist. LEXIS 74039, at *30 (S.D.N.Y. Sept. 29, 2006). Each of these factors weighs in favor of permitting this action to proceed as a collective action.

Where, as here, plaintiffs' claims "derive from company-wide policies" that are "allegedly 'a common practice or scheme' that violated the law[,]" the factual and employment settings of the individual plaintiffs weigh in favor of collective treatment. *Ayers*, 2007 U.S. Dist. LEXIS 19634, at *20 (internal quotation marks omitted). As discussed in section IV.A., *supra*, Plaintiffs' minimum wage and overtime claims are subject to generalized proof of Defendant's recordkeeping and payroll practices. Where such a similarity exists, collective action treatment is warranted, and differences in job duties, work schedules, and pay rates do not defeat § 216(b) certification. *Id.* at *19.

Defendant has failed to identify any defenses at all to Mr. Pefanis' and Mr. Peralta's FLSA claims, let alone individualized defenses. Instead, Defendant merely point out differences in Plaintiffs' pay and minimum wage[7] claims.[8] (Def.'s Mem. at 3-4.) Yet these differences have no effect on the overarching similarity between Plaintiffs: they both were non-exempt employees who worked overtime and were not properly compensated for doing so.

"[I]n determining fairness and procedural considerations, courts consider whether a collective action would lower costs to the plaintiffs through the pooling of resources, efficiently resolve[] common issues of law and fact, and coherently manage the class in a manner that will not prejudice any party." *Ayers*, 2007 U.S. Dist. LEXIS 19634, at *22 (alteration in original; internal quotation marks omitted); *see also Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165,

---

[7] Mr. Pefanis' minimum wage claim is very small in comparison to his overtime claim, and likely amounts to just a few unpaid hours per week.

[8] Any differences in Plaintiffs' claims for spread of hours and unlawful deductions, if any, are wholly irrelevant to whether Plaintiffs are "similarly situated" for the purpose of proceeding as a collective action, as the spread of hours and unlawful deduction claims are a matter of state law and are thus part of the Rule 23 class action rather than the § 216(b) collective action. (Def.'s Mem. at 3-4.)

10

170 (1989). All of these considerations support collective treatment of the FLSA claims in this action: the costs of litigation are shared by the Plaintiffs, there are common issues of law and fact for both Plaintiffs' claims, and the adjudication of just two plaintiffs' claims is certainly manageable.

For the foregoing reasons, Defendant's motion for decertification of the FLSA collective action should be denied.

### C. SERGIO REYES LATENCHE AND HILARIO CARDOSO SHOULD NOT BE EXCLUDED WITH CLASS BECAUSE NOTICE WAS SENT TO THEM IN ACCORDANCE WITH DUE PROCESS

Defendant's contention that two class members – Sergio Reyes Latenche and Hilario Cardoso – who allegedly did not receive notice of this lawsuit be excluded from the class is contrary to settled law and should be rejected. (Def.'s Mem. at 8.) Rule 23(c)(2)(B) states that when a court certifies a class pursuant to Rule 23(b)(3), it "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Courts have long acknowledged that sending court-approved notice via first class mail to ascertainable class members' last known addresses satisfies this requirement, even if all class members do not actually receive the notice. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974); *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C.C. 1992); *In re Vivendi Universal, S.A. Secs. Litig.*, No. 02 Civ. 5571, 2009 U.S. Dist. LEXIS 31198, at *37 (S.D.N.Y. March 31, 2009); *Gonzalez v. City of New York*, 396 F. Supp. 2d 411, 416-418 (S.D.N.Y. 2005). This standard also satisfies due process: "It is widely recognized that for the due process standard to be met it is not necessary that every class member receive actual notice, so long as class counsel acted reasonably in selecting means likely to inform persons affected." *In re Prudential Secs. Inc. P'ships Litig.*, 164 F.R.D. 362, 368

(S.D.N.Y. 1996); *see also Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950); *Weigner v. City of New York*, 852 F.2d 646, 650 (2d Cir. 1988); *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975); *In re Vivendi Universal, S.A. Secs. Litig.*, 2009 U.S. Dist. LEXIS 31198, at 36-38. In fact, "many of the cases standing for this proposition also indicate that notices by mail sent to the last known address of the absent class member meets the due process requirement of notice through 'reasonable effort' even where numerous class members have since changed addresses and do not receive notice." *In re Prudential Secs. Inc. P'ships Litig.*, 164 F.R.D. at 369.

As ordered by the Court, class counsel sent Court-approved notice to the last known address of each class member as identified by Defendant by first class mail, including Mr. Latenche and Mr. Cardoso.[9] (Schulman Decl. ¶ 4.) Following the Court's invalidation of exclusion request forms on December 29, 2009, class counsel sent the Court-approved corrective notice to all individuals whose forms were invalidated at their last known addresses as maintained by Defendant by first class mail, including Mr. Latenche and Mr. Cardoso. (*Id.* at ¶¶ 5, 7.) Mr. Cardoso's address was updated by Defendant's counsel before the corrective mailing. (*Id.* at ¶ 7.) These mailings satisfied due process, as they were reasonable means of providing notice. The mailings were also supplemented by the posting of the corrective notice at Westway. (Schulman Ex. 2, 90:12-91:4.) Indeed, Defendant does not propose any further action class counsel could have taken to notify Mr. Latenche and Mr. Cardoso of this class action lawsuit and their opportunity to exclude themselves from the class. Therefore, Mr. Latenche and Mr. Cardoso should not be excluded from the class.

---

[9] Plaintiff's counsel learned after the close of the initial opt-out period that the list of class members provided by Defendant was incomplete. (Schulman Ex. 2, 54:9-55:19, 60:22-63:16.) Assuming that the Court rejects Defendant's motion to decertify the Class and this case proceeds as a class action, Plaintiff will seek an Order requiring Defendant to provide a complete and accurate list of class members and authorize notice to be sent to those class members not previously identified, giving them the opportunity to opt out of the class.

Moreover, Mr. Latenche and Mr. Cardoso clearly had actual notice of the pendency of this class action lawsuit, as they each submitted an exclusion request form despite not receiving the mailed notices. (Schulman Ex. 12.) In all likelihood, they also had actual notice that the Court invalidated these exclusion request forms. Mr. Latenche was still employed by Westway when the court-approved corrective notice was posted in the restaurant, and it is likely that Mr. Cardoso was as well, given that Defendant's counsel was able to provide an updated address for him. (Schulman Ex. 2, 90:12-91:4, 91:18-23.) That Mr. Latenche and Mr. Cardoso did not opt out of this class action a second time when this notice was posted at Westway suggests that their initial requests for exclusion were not wholly voluntary. This is all the more reason why they should not be excluded from the class.

However, Plaintiffs do not object to the exclusion of class members who submitted timely and valid exclusion request forms from the class, as these persons are, by definition, already excluded from the class.

Thus, Defendant's motion to exclude Mr. Latenche and Mr. Cardoso should be denied.

## V. CONCLUSION

For the foregoing reasons, Defendant's motion should be denied.

Dated: May 21, 2010
New York, New York

            By: /s/ Denise A. Schulman
               Denise A. Schulman (DS-8066)
               D. Maimon Kirschenbaum (DK-2448)

               JOSEPH, HERZFELD, HESTER &
               KIRSCHENBAUM
               757 Third Avenue
               25th Floor
               New York, NY 10017
               212-688-5640

               *Attorneys for Plaintiff, collective members, and the class*