```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                         :
ANDREAS PEFANIS on behalf of himself     :
and others similarly situated,           :
                      Plaintiff,         :    08 Civ. 002 (DLC)
                                         :
            -v-                          :    OPINION & ORDER
                                         :
WESTWAY DINER, INC.,                     :
                      Defendant.         :
                                         :
----------------------------------------X
```

APPPEARANCES:

For Plaintiff:

D. Maimon Kirschenbaum
Denise Schulman
Joseph, Herzfeld, Hester & Kirschenbaum LLP
757 3rd Avenue, 25th Floor
New York, NY 10017

For Defendant:

Arthur Forman
Mitchell & Incantalupo
98-20 Metropolitan Avenue
Forest Hills, NY 11375


DENISE COTE, District Judge:

On January 2, 2008, plaintiff Andreas Pefanis ("Pefanis") commenced this action against his former employer, defendant Westway Diner, Inc. ("Westway"), seeking to remedy violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq., and New York Labor Law ("NYLL").  The FLSA claims have been preliminarily approved for collective action pursuant to 28 U.S.C. § 216(b), and the NYLL claims have been certified as a

1

class action pursuant to Rule 23, Fed. R. Civ. P.  On May 3, 2010, following the close of discovery, Westway moved to "decertify" both the collective action and class action, or, in the alternative, for partial summary judgment.  On June 4, Pefanis moved for leave to amend the first amended complaint.  For the following reasons, Westway's motion for decertification and partial summary judgment is denied, and Pefanis' motion for leave to amend is granted.

BACKGROUND

The following facts are not in dispute.  Westway owns and operates the Westway Diner, a restaurant located in midtown Manhattan.  At all relevant times, Westway Diner was open twenty-four hours per day, seven days per week.  Since 2003, Petros Dafnos ("Dafnos") has been the general manager of Westway Diner, and before that, was the night manager.  In addition to management, Westway employs waiters, busboys, cashiers, and a host in the "front" of the restaurant, and a chef, prep cooks, grillmen, and dishwashers in the kitchen.

Dafnos was responsible for preparing Westway's payroll.  Until November 2009, Westway did not maintain contemporaneous time records for its employees.  In November 2009, nearly two years after the filing of this action, and approximately two months after the Rule 23 class action was certified, Westway

2

began keeping daily records of the number of hours its employees worked using a time card system.  Westway still does not, however, maintain contemporaneous records of employees' meal breaks, even though it deducts pay for meal breaks.

Pefanis was employed by Westway as a waiter from approximately November 2006 to November 2007, and opt-in plaintiff Salvador Peralta ("Peralta") was employed as a prep cook from approximately 1999 until April 2008.[1]  Pefanis often worked over fifty hours per week and Peralta typically worked sixty hours per week.[2]  Other waiters, dishwashers, grillmen, and busboys employed by Westway also generally worked over forty hours per week.  In addition, Pefanis, Peralta, and other Westway employees oftentimes worked ten hours or more in a single day.

On January 2, 2008, Pefanis filed the original complaint in this action, asserting claims under the FLSA for unpaid minimum wage and overtime compensation.  The complaint also asserted claims for unpaid minimum wage, overtime, and "spread of hours" pay pursuant to the New York Minimum Wage Act, N.Y. Lab. L.

---

[1] Peralta previously worked at Westway Diner as a dishwasher from approximately 1992 until 1994.

[2] Peralta testified at his deposition that since 2005, he earned $450.00 per week (except for his last month of work, when he was paid $470.00 per week).  Based on his ordinary schedule of 60 hours per week, and a weekly salary of $450.00, his wage was $7.50 per hour.

§ 650, et seq., and the New York Spread of Hours Provision, N.Y. Lab. L. § 650, et seq. and N.Y. Comp. Code R. Regs. Tit. 12, § 137-1.7.  On July 10, Pefanis filed the first amended complaint to allege that Westway had also made illegal deductions from employee pay in violation of N.Y. Lab. L. § 193.

On October 8, 2008, notice of Pefanis' FLSA minimum wage and overtime claims was authorized to be sent to other similarly situated Westway employees pursuant to 29 U.S.C. § 216(b). Pefanis v. Westway Diner, Inc., No. 08 Civ. 002(DLC), 2008 WL 4546526, at *1 (S.D.N.Y. Oct. 8, 2008) (the "October 2008 Opinion").  Court-approved notice was sent to all putative collective action members by first-class mail to their last-known addresses, which were provided by Westway.  Peralta is the only other Westway employee that has opted into the FLSA action.

By Order dated August 7, 2009, the Court certified the NYLL minimum wage, overtime, spread of hours, and unlawful deductions claims as a class action pursuant to Rule 23(a) and (b)(3), Fed. R. Civ. P.  The class definition includes "all service employees who worked at Westway since January 2, 2002 to the present, including all kitchen staff, servers, bussers, and runners." Court-approved notice was sent to all class members via first-class mail to their last-known addresses, which were provided by Westway.  Notices sent to two employees, Sergio Reyes Latenche

("Latenche") and Hilario Cardoso ("Cardoso"), were returned as undeliverable.

After notice of the class action was sent, twenty-two of Westway's then-current employees, including Latenche and Cardoso, submitted exclusion request forms directly to Dafnos. After a hearing held on December 29, 2009, these exclusion request forms were invalidated based on a finding that the employees felt that they could "curry favor with their boss by opting out of the class" and that the opt-out pattern was "unreliable."  Westway was ordered to post a curative notice in the workplace at Westway Diner and, on January 21, 2010, revised exclusion request forms were sent to employees who had opted out of the class action, including Cardoso and Latenche.  Westway provided an updated address for Cardoso, but the notice sent to him was again returned as undeliverable.  The notice sent to Latenche, who was still employed by Westway at the time, was also returned as undeliverable.  Of the twenty-two employees to whom corrective notices were sent, fifteen opted-out of the class action.  Latenche and Cardoso, however, did not opt out again.

Discovery closed on April 2.  On April 30, Westway moved to "decertify" the collective action and class action, or, in the alternative, for partial summary judgment to redefine the Rule 23 class to exclude the fifteen employees who have opted out.

5

Westway also moved to exclude Latenche and Cardoso from the class.  On May 21, plaintiffs filed their opposition.  Westway did not file a reply.

On June 4, Pefanis moved for leave to amend the complaint to specify that the class will seek to recover liquidated damages on the NYLL claims.  Westway did not oppose Pefanis' motion.

DISCUSSION

1.   Motion to "Decertify" the FLSA Collective Action

The FLSA embodies a federal legislative scheme to protect covered employees from prohibited employer conduct.  29 U.S.C. §§ 201, et seq.  The FLSA permits one or more employees alleging violations of the FLSA to pursue an action in a representative capacity for "other employees similarly situated."  Id. § 216(b).  Section 216(b) states, in pertinent part, that an action to recover damages under the FLSA

> may be maintained against any employer . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

Id.  These FLSA "collective actions," as they are known, are intended to facilitate a resolution in a single proceeding of claims stemming from common issues of law and fact, and to lower

6

the costs of individual actions by pooling claims and resources. See Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170-71 (1989).

In contrast to the procedural requirements set forth in Rule 23, Fed. R. Civ. P., for class actions, neither the FLSA nor the Federal Rules of Civil Procedure provide for the "certification" of a FLSA collective action.  See Amendola v. Bristol-Myers Squibb Co., 558 F. Supp. 2d 459, 463 n. 1 (S.D.N.Y. 2008); Damassia v. Duane Reade, Inc., No. 04 Civ. 8819(GEL), 2006 WL 2853971, at *2 (S.D.N.Y. Oct. 5, 2006).[3] Rather than "certifying" a collective action, a district court may authorize notice of the putative collective action to other employees after making a preliminary determination that the employees who will be receiving the notice are "similarly situated" to the plaintiff within the meaning of § 216(b).  See, e.g., Lynch v. United Servs. Auto Ass'n, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007).  The district court also sets the

---

[3] Section 216(b) codifies the "spurious class action practice of the 1938 version of [Fed. R. Civ. P. 23] by requiring each similarly situated prospective plaintiff affirmatively to consent, or opt into the suit, to be bound by the judgment." Elizabeth K. Spahn, Resurrecting the Spurious Class: Opting-In to the Age Discrimination in Employment Act and the Equal Pay Act through the Fair Labor Standards Act, 71 Geo. L.J. 119, 129 (1982).  When the class action rule was significantly revised in 1966, its advisory committee specifically noted that the new rule was not intended to affect § 216(b) of the FLSA.  Id. at 131 (citing Notes of Advisory Committee on 1966 Amendment to Rule, 28 U.S.C. app. Rule 23, at 429 (1976)).

conditions under which a plaintiff provides notice to fellow employees of the existence of a collective action and the steps they must take if they wish to join the action.  See Hoffman-La Roche, 493 U.S. at 171 (construing 29 U.S.C. § 216(b) in the context of an Age Discrimination in Employment Act of 1967 ("ADEA") lawsuit); Braunstein v. E. Photographic Labs., Inc., 600 F.2d 335, 336 (2d Cir. 1978) (per curiam).[4]  Unlike the procedures for an opt-out class action under Rule 23, only plaintiffs who opt into the FLSA collective action can benefit from the judgment or be bound by it.

To obtain authorization to provide such notice, a plaintiff must make only a "modest factual showing" that he and the other putative collective action members "were victims of a common policy or plan that violated the law."  Realite v. Ark Rests. Corp., 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998) (Sotomayor, J.) (collecting cases).

> Where a plaintiff fails to carry this burden or where a defendant employer shows either that the potential recipients of the notice are not similarly situated to the plaintiff or that it will likely succeed at trial in proving that the employees are not entitled under the FLSA to overtime compensation, a court may refuse to authorize notice or postpone deciding the issue pending further discovery and motion practice.

---

[4] Rather than any specific Federal Rule of Civil Procedure, this authority derives from district courts' inherent power "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."  Hoffman-La Roche, 493 U.S. at 173 (citation omitted).

Amendola, 558 F. Supp. 2d at 467.  Cf. McLaughlin v. Am. Tobacco Co., 522 F.3d 215, 228 (2d Cir. 2008) ("[W]hen a claim cannot succeed as a matter of law, the Court should not certify a class on that issue." (citation omitted)).

After the opt-in period and discovery has closed, courts in this district conduct a more searching analysis based upon a more developed factual record to determine whether the opt-in plaintiffs are, in fact, similarly situated.  See, e.g., Indergit v. Rite Aid Corp., Nos. 08 Civ. 9361(PGG), 08 Civ. 11364(PGG), 2010 WL 2465488, at *4 (S.D.N.Y. June 16, 2010); Damassia, 2006 WL 2853971, at *3.  Plaintiffs need not meet, however, the more "stringent" requirements that apply to the joinder and severance of claims.  See Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1219 (11th Cir. 2001); see also Spahn, supra, at 132.  All that is required is a persuasive showing that the original and opt-in plaintiffs were common victims of a FLSA violation pursuant to a systematically-applied company policy or practice such that there exist common questions of law and fact that justify representational litigation.

If the factual record reveals that the opt-in plaintiffs are not similarly situated to the original plaintiffs, the case may be divided, if appropriate, into subgroups.  Realite, 7 F. Supp. 2d at 308.  Alternatively, the claims of the opt-in plaintiffs may be dismissed without prejudice and the action

proceed for the original plaintiffs alone, but not as a collective action.  See, e.g., Indergit, 2010 WL 2465488, at *4; Damassia, 2006 WL 2853971, at *3.[5]

The October 2008 Opinion found that "all non-exempt hourly employees" of Westway were similarly situated and authorized notice of the collective action to be sent to these employees. October 2008 Opinion, 2008 WL 4546526, at *1.  Only Peralta has opted into the FLSA action.  Now that discovery is closed, Westway argues that Pefanis and Peralta present "disparate factual circumstances" for their claims, and therefore this action should not proceed to trial as a collective action. Westway's argument is without merit.

At their core, both Pefanis' and Peralta's claims are premised on the fact that they were non-exempt employees who worked overtime, but were not properly compensated by Westway. Westway points to no evidence gleaned from discovery to undermine the preliminary finding in the October 2008 Opinion

---

[5] While courts and parties often refer to this step in FLSA litigation as "decertification," this term is inaccurate given that there has been no "certification."  Rather, a court merely reexamines, based on a more developed factual record, whether the plaintiffs are, in fact, "similarly situated" within the meaning of § 216(b) such that the original plaintiffs may continue to represent the opt-in plaintiffs through trial.  The concept of "decertifying" a FLSA collective action in this district appears to have its origins in Realite, 7 F. Supp. 2d 303, where the court indicated that after discovery, it might "decertify the class, or divide the class into subgroups, if appropriate."  Id. at 308 (citing Lusardi v. Xerox Corp., 122 F.R.D. 463 (D.N.J. 1988)).

that Westway's employees are "'similarly situated' as to several of the claims asserted here," including failure to pay overtime. Id.  Pefanis' and Peralta's minimum wage and overtime claims derive from Westway's "company-wide policies," allegedly "a common practice or scheme that violated the law." Ayers v. SGS Control Servs., Inc., No. 03 Civ. 9077 (RMB), 2007 WL 646326, at *5 (S.D.N.Y. Feb. 27, 2007) (citation omitted).  Such claims are thus subject to generalized proof of Westway's recordkeeping and payroll practices.  Any individual differences in job duties, work schedules, and pay rates do not alter the conclusion that Pefanis and Peralta are similarly situated.  See id.

Westway points to the fact that during the relevant years, Pefanis worked as a waiter and was paid on an hourly basis, while Peralta as a prep cook and was paid on a weekly basis.[6] These differences have no bearing on their overtime and minimum wage claims.  Westway also contends that because Peralta was "clearly paid minimum wage," "makes no claim that deductions were ever taken from his salary," and is "not entitled to spread of hours pay," he is differently situated than Pefanis.  The fact that Peralta may not have a minimum wage claim, and therefore may not benefit from any remedy secured by Pefanis on

---

[6] While Westway argues that Peralta's hourly wage of $7.50 was higher than the prevailing minimum wage, it does not contend that employees who were paid on a weekly basis, like Peralta, were properly paid a weekly overtime premium.

that claim, does not mean Pefanis' and Peralta's overtime claims should not be tried together.[7]  Further, to the extent Peralta may lack an illegal deductions claim and a spread of hours claim, that would have no impact on the FLSA collective action since those are NYLL claims.  Accordingly, Westway's motion to "decertify" the FLSA collective action is denied.

2.   Motion to Decertify the Class Action

Westway argues that the Rule 23 class action should be decertified for failure to satisfy the predominance requirement of Rule 23(b)(3), Fed. R. Civ. P.  Pursuant to Rule 23(c)(1), Fed. R. Civ. P., a district "can always alter, or indeed revoke, class certification at any time before final judgment is entered."  Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc., 502 F.3d 91, 104 n.9 (2d Cir. 2007).  Rule 23(b)(3) permits certification "if the questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class litigation is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3); Brown v. Kelly, 609 F.3d 467, 476 (2d Cir. 2010).  "The predominance requirement

---

[7] Plaintiffs indicate that Pefanis' minimum wage claim is very small in comparison to his overtime claim and likely amounts to just a few unpaid hours per week.

12

calls only for predominance, not exclusivity, of common questions."  McLaughlin, 522 F.3d at 231 (citation omitted).

Westway does not identify any evidence or legal theory that undermines this Court's earlier finding that the Rule 23(b)(3) predominance requirement is satisfied here.  Westway reiterates the same conclusory argument that it made with respect to the FLSA collective action, namely that Peralta's "claims are distinctly different than those of . . . Pefanis."  Westway also asserts that "it can be assumed that the claims of Pefanis and Peralta will be different than those of other class members" (emphasis added), although it provides no evidence from the record to support this assertion.

Notably, Westway does not identify any individual issues among class members that would predominate over issues of law and fact common to the class at trial.  The primary questions with respect to the NYLL claims are whether Westway failed to pay its employees (1) for all hours worked; (2) one-and-a-half times their regular rate for hours worked in excess of forty hours per week; (3) New York's spread of hours pay when employees' workdays lasted longer than ten hours; and (4) whether Westway made any illegal deductions.  As previously found, these questions are subject to generalized proof on a class-wide basis and predominate over any individual issues that may be encountered.  While the number of hours each class member

13

worked may vary, the systems and practices that affected their rates of pay apply to all class members.

Westway further argues that it "will need to raise individual defenses as to each class members' claims," thereby precluding class certification.  Westway does not, however, actually identify any such defenses.  Moreover, "the presence of individual defenses does not by its terms preclude class certification."  <u>Id.</u> at 232.  Accordingly, Westway's motion to decertify the class action is denied.

3.   Westway's Request to Exclude Latenche and Cardoso

Westway moves, in the alternative, for partial summary judgment to exclude putative class members Latenche and Cardoso from the Rule 23 class.[8]  Westway argues that because the notices sent to these employees were returned as undeliverable, they did not receive adequate notice of the class action, and should therefore be excluded.  Westway's argument is without merit.

Rule 23(c)(2)(B), Fed. R. Civ. P., provides, in pertinent part, that "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through

---

[8] Westway also moves, without objection, to exclude from the class the fifteen employees who returned opt-out forms. Westway's motion is unnecessary because, by definition, the fifteen employees who have opted out of the class action are not part of the class.

reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Supreme Court has interpreted this requirement to mean that "[i]ndividual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort." Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 173 (1974). For the due process standard to be met, it is not necessary that every class member receive actual notice, so long as class counsel acted reasonably in selecting means likely to inform persons affected. See Weigner v. The City of New York, 852 F.2d 646, 649 (2d Cir. 1988). "[U]se of first-class mail to send a required notice has regularly been upheld." Wolfert ex rel. Estate of Wolfert v. Transamerica Home First, Inc., 439 F.3d 165, 176 (2d Cir. 2006) (citation omitted).

The notice sent to Latenche and Cardoso satisfied the requirements of Rule 23(c)(2)(B) and due process. Class counsel sent court-approved notice to all class members, including Latenche and Cardoso, at their last-known addresses via first-class mail. After the twenty-two exclusion request forms were invalidated on December 29, 2009, class counsel sent court-approved corrective opt-out notices to all employees whose forms were invalidated, including Latenche and Cardoso, at their last known addresses. Westway provided an updated address for Cardoso prior to the corrective notice mailing. The mailings were supplemented by the posting of the corrective notice at

Westway Diner.  These mailings and posting of notice were sufficient to satisfy Rule 23(c)(2)(B).

Moreover, Latenche and Cardoso clearly had actual notice of the class action.  After the initial notice was mailed to all class members, both Latenche and Cardoso returned exclusion request forms, despite their notices having been returned as undeliverable.  It is also likely that Latenche and Cardoso had actual notice of the corrective notice posted at Westway Diner.  Latenche was still employed by Westway at the time, and presumably Cardoso was as well given that Westway was able to provide an updated address for him.  The fact that Latenche and Cardoso did not opt out of the class action a second time after corrective notice was posted at Westway suggests that their initial requests for exclusion may not have been wholly voluntary.  Accordingly, Westway's request to exclude Latenche and Cardoso from the class is denied.

4.  Leave to Amend

Pefanis moves for leave to amend pursuant to Rule 15(a), Fed. R. Civ. P., to specify that the class will seek to recover liquidated damages on the NYLL claims.  See N.Y. Lab. Law §§ 198(1-a), 663(1).  Under Rule 15(a), "[t]he court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "[A]mendment of a pleading as a matter of

16

course pursuant to Rule 15(a) is subject to the district court's discretion to limit the time for amendment of the pleadings in a scheduling order issued under Rule 16(b)." Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 244 (2d Cir. 2007).  "[A] district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause."  Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000).  "[A] finding of 'good cause' depends on the diligence of the moving party."  Id.

    While the March 28, 2008 deadline for amendment of pleadings set forth in the Rule 16 Scheduling Order governing the proceedings in this action has long since passed, Pefanis has shown "good cause" for his application to amend.  On March 31, 2010, the Supreme Court found that N.Y. C.P.L.R. § 901(b), which precludes a suit to recover a statutory "penalty" or "minimum measure of recovery" from proceeding as a class action, was in direct conflict with Rule 23, Fed. R. Civ. P.  See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., -- U.S. --, 130 S. Ct. 1431, 1438 (2010) ("Shady Grove").  As a result, the Court held that Rule 23, not § 901(b), must be applied to New York class actions brought in federal court.  Id.  As such, plaintiffs may now seek liquidated damages authorized by NYLL as part of a Rule 23 class action in federal court.

17

Pefanis' counsel acted with sufficient diligence to amend the first amended complaint after it learned of the decision in Shady Grove in early April 2010.  Pefanis' counsel contacted Westway's counsel in late April and requested that Westway consent to the amendment.  Westway's counsel did not respond to the request.  Shortly thereafter, Westway filed the motion to decertify the class and collective actions.  Pefanis' counsel filed the motion to amend the complaint on June 4, not long after the briefing on Westway's motion was fully submitted.  Thus, Pefanis' counsel acted diligently by filing the motion to amend within two months after learning of the Shady Grove decision.  Furthermore, there is no evidence of any undue delay, bad faith, or dilatory motive on the part of Pefanis.  Nor is there evidence of any undue prejudice to Westway, who has not opposed the motion to amend.  Accordingly, Pefanis' motion for leave to amend the first amended complaint is granted.

CONCLUSION

Westway's May 3, 2010 motion to "decertify" the collective and class actions, or, in the alternative, for partial summary judgment, is denied.  Pefanis' June 4, 2010 motion for leave to amend the first amended complaint is granted.  Further proceedings in this action shall be governed by a separate scheduling order to be issued with this Opinion.


SO ORDERED:

Dated:    New York, New York
          September 7, 2010

                                   _____
                                         DENISE COTE
                                   United States District Judge